## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| HERITAGE HOME GROUP LLC, *et al.*, | ) | Case No. 18-11736 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: D.I. No. 219** |

## MEMORANDUM OPINION

The Court is moving quickly at Debtors' request to issue a ruling on a retention issue. The evidentiary hearing and argument took place yesterday, September 26, 2018. The discussion therefore may not be in the warranted detail for the sake of expediency.

1. The Debtors, Heritage Home Group, LLC, *et al.*, have moved (the "Motion") for an Order authorizing them to engage SB360 Capital Partners, LLC (referred to as the "Consultant" or "SB360") to assist them in the sale of Debtors' "Non-Luxury Group" assets. The Non-Luxury Group consists of the Broyhill, Thomasville, Drexel, Drexel Heritage and Henredon businesses.

2. In an effort to maximize value, Debtors determined to sell the inventory, furniture, fixtures and equipment ("FF&E") and raw materials of the Non-Luxury Group. The Debtors and their advisors negotiated with and entertained bids from entities, one of which was the Consultant; second, a joint venture composed of Great American Group and Tiger Capital Group, LLC; and third, a joint venture of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, L.L.C. Debtors exercised their business

judgment and determined that among the three bidding groups, the Consultant was the most appropriate choice.[1]

3. Debtors and others in support take the position that retaining the Consultant can be accomplished pursuant to Sections 105(a) and 363(b).[2] Section 105(a) allows the Court to issue an order that is necessary to advance the provisions of the Bankruptcy Code. Section 363(b) permits the use, sale or lease of estate property outside of the ordinary course of business, authorized when a debtor demonstrates a sound business justification. The Office of the United States Trustee (the "U.S. Trustee") opposes the retention, arguing that the retention must be pursuant to Section 327(a).

4. The Consultant has been tasked with the following responsibilities under the store closing and asset disposition agreement, dated as of August 31, 2018, between Debtors and the Consultant (the "Disposition Agreement"):

(a) Recommend appropriate discounting to effectively sell all of Debtors' goods located at or to be delivered to the Stores and Distribution Centers in accordance with a "store closing," "everything must go," "sale on everything," or other mutually agreed upon themed sale, and recommend appropriate point-of-purchase, point-of-sale, and other internal and external advertising in connection therewith. SB360 shall also be permitted to use wholesale channels to sell inventory, provided that, before SB360 can sell any inventory to any affiliated third-parties, SB360 must obtain the consent of Merchant (the Debtors).

---

[1] HHG IPCo, LLC, affiliated with the Consultant and Authentic Brand Group ("ABG"), has entered into an asset purchase agreement for the Non-Luxury Group intellectual property assets.

[2] References to "Section" are to sections of the Bankruptcy Code, 11 U.S.C. § § 101, *et seq.*

(b)   Provide qualified supervision to oversee the conduct of the Sale, which supervisors, once identified to Merchant, shall not be removed from the Sale event unless Merchant otherwise agrees or requests removal.

(c)   Maintain focused and constant communication with Store and Distribution Center-level employees and managers to keep them abreast of strategy and timing and to properly effect Store and Distribution Center level communication by Debtors' employees to customers and others about the Sale.

(d)   Establish and monitor accounting functions for the Sale, including evaluation of sales of Debtors' goods located at the Stores and Distribution Centers by category, sales reporting and expense monitoring, all of which shall be shared with the Debtors' advisors monitoring the Sale.

(e)   Recommend loss prevention strategies.

(f)   Coordinate with the Debtors so that the operation of the Stores and Distribution Centers are being properly maintained including ongoing customer service and housekeeping activities.

(g)   Recommend appropriate staffing levels for the Stores and Distribution Centers and appropriate bonus and/or incentive programs (to be funded by the Debtors) for Store and Distribution Center employees.

(h)   Assist the Debtors to commence the Sale as a "store closing," "sale on everything," "everything must go," or such other themed sale approved by the Debtors and the Bankruptcy Court, provided that, the Sale shall not use the "going out of business" sale handle;

(i)   Assist the Debtors in the scheduling and allocation of inventory delivery to the Stores or customers from the Distribution Centers and to and between the Distribution Centers with the goal of minimizing operating expenses for the Sale; and

(j)   Operate the Sale in a manner to preserve and protect the value of Debtors' intellectual property.

5. In return, Debtors agreed to pay SB360 commissions from the sales of assets and a separate commission for selling FF&E. Debtors are responsible for all expenses from the sales except that the Consultant is responsible for expenses that exceed budgeted amounts.

6. The Debtors maintain control over personnel, merchandise, FF&E and are responsible alone for computing, collecting, holding, reporting and paying sales taxes. Disposition Agreement §§ 5A, 5C. SB360 has no discretion over business decisions and is limited to making recommendations to Debtors. Disposition Agreement § 7.

7. The U.S. Trustee argues that Section 327(a) applies to the present facts. Section 327(a) provides in relevant part that a debtor in possession,

> with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

The U.S. Trustee strongly urges the Court to find that SB360 is a "professional like an auctioneer" and has not complied with Section 327(a) by submitting a Section 327(a) application, filing a declaration of disinterestedness pursuant to Federal Rule of Bankruptcy Procedure 2014, being disinterested, disclosing its fees and having its fees approved by the Court.[3]

---

[3] While not deciding an issue which is not before it, the Court observes that it is questionable that SB360 is disinterested and therefore cannot competently seek Section 327(a) retention. The stalking horse for the Non-Luxury assets is an affiliate of SB360 and SB360 has agreed to share the economics of the consulting agreement with an affiliate of ABG.

8. The U.S. Trustee's points in support of the application of Section 327(a) are:

a. The term "auctioneer" is defined to include someone "authorized to sell goods or lands of other persons at public auction for a commission or fee," citing Black's Law Dictionary (10th ed. 2014).

b. Section 327 is designed to ensure adherence to fiduciary duties and to eliminate conflicts of interest.

c. Entities in other cases performing similar services were retained as liquidators and utilized Sections 327 and 328.

d. Case law supports the Section 327(a) retention. *See, e.g., In re Borders Group, Inc.*, 453 B.R. 477, 485 (Bankr. S.D.N.Y. 2011) (Section 327(a) applications are necessary even for *de minimis* asset sales). *See also, In re First Merchants Acceptance Corp.*, 1997 WL 873551 (D. Del. Dec. 15, 1997) (Agent was a professional and therefore subject to Section 327(a), but did not qualify because it was an agent for lender bank, and setting out factors).

8. The Court first rejects the U.S. Trustee's argument that SB360 is an auctioneer. The Court could not find a decision defining "auctioneer," nor is it defined in the Bankruptcy Code. Looking to Black's Law Dictionary (10th ed. 2014), "auctioneer" is defined as follows:

> A person in charge of selling at an auction, with the responsibility of calling for bids, announcing how much money has already been offered for something, and gaveling down the hammer price; a person legally authorized to sell goods or land of other persons at public auction for a commission or fee.

SB360 clearly does not satisfy the first definition and the second definition is not applicable because there will not be a public auction. The Court therefore concludes that SB360 is not an "auctioneer".

9. It is clear from the Disposition Agreement and the testimony at the hearing of SB360's Executive Managing Director and General Counsel, Mr. Robert Raskin, that

SB360 was not an auctioneer or other professional, but an advisor. Mr. Raskin's entire testimony supported the advisor rather than professional person description.

10. The U.S. Trustee leans heavily on *Borders Group* and *First Merchants*. Both decisions are instructive.

11. In *Borders Group*, Judge Glenn of the Bankruptcy Court in the Southern District of New York ruled on a retention issue involving sales of assets at *de minimis* prices. Judge Glenn ruled that the "limited value of the *De Minimis* Assets does not excuse compliance with sections 327(a) and 328(a) . . . . Applications to retain brokers, auctioneers and liquidators to conduct *de minimis* asset sales are commonplace; it need not be an expensive or time-consuming process." Judge Glenn thus favored Section 327(a) retentions, but did not state his reasoning.

12. The court in *First Merchants* also required a Section 327(a) retention. The Delaware District Court ruled that a Section 327(a) retention of Ugly Duckling rather than a motion under Section 363 was necessary. The District Court discussed "two camps" on the issue. The first adopted a qualitative approach, under which a "professional" is an employee that is given discretion or autonomy in some part of the administration of the debtors' estate. 1997 WL 873551 at *2. The second approach is a quantitative analysis in which a "professional" involves "those occupations which play a central role in the administration of the debtor proceeding, and not those occupations which are involved in the day-to-day mechanics of the debtor's business." *Id.* The District Court listed factors to be considered. *Id.* at *3. What is clear in *First Merchants* is that a "professional" is limited to those occupations which control, purchase or sell assets that are important to

6

reorganization, is negotiating the terms of a plan of reorganization, has discretion to exercise his or her own personal judgment, and whether he or she contributes "some degree of special knowledge or skill." *Id.* at *3.  It is clear that SB360 is not at the center of Debtors' reorganization and although it does have special knowledge[4], the terms of the Disposition Agreement nullify the control of SB360.

13. The Court looks to two recent decisions for guidance.  The first is *In re Nine West Holdings, Inc.*, 2018 WL 3238695 (Bankr. S.D.N.Y. July 2, 2018).  There, Judge Shelley Chapman ruled that Alvarez and Marsal ("A&M") and Ralph Schipani ("Schipani"), an A&M employee who was serving as Nine West's CEO, did not require a Section 327(a) retention.  A&M and Schipani had been serving Nine West for four years.  Nine West filed for bankruptcy protection and Judge Chapman stated the issue as follows: "should the Debtors be permitted to retain A&M under Section 363(b) . . . as requested by the Application, or must the retention of A&M be considered solely under Section 327(a) of the Code, as the U.S. Trustee asserts?  The U.S. Trustee argued that A&M and Schipani were professional persons.  The court rejected the U.S. Trustee's argument.  The Court cited *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) for the proposition that a "professional" for purposes of Section 327(a) is intimately involved in the reorganization process.  Surely, SB360 is not so involved.

14. The Court also looks to *In re hhgregg, Inc.*, Case No. 17-01302-RLM-1 (Bankr. S.D. Ind. May 8, 2017), in which the court rejected any requirement of a 327(a) retention.

---

[4] Many entities and people involved in bankruptcy cases have special knowledge but do not require Section 327(a) retention.

7

The court held an evidentiary hearing and found, *inter alia*, that the consultant (1) carried out debtor's judgment, (2) did not play a central role in the reorganization, (3) did not have broad discretion and (4) had no control over sales prices.

15. Here, the Disposition Agreement requires SB360 to "recommend appropriate discounting," "provide qualified supervision," "maintain focused and constant communication," "establish and monitor accounting functions," "recommend loss prevention strategies," "coordinate with the Debtors," "recommend appropriate staffing," and "assist the Debtors." SB360's responsibilities are clearly advisory and do not constitute an intimate role in the Debtors' plans.

16. The Bankruptcy Code provides clearly that bankruptcy courts <u>must</u> require that attorneys, accountants, appraisers and other professionals be retained formally pursuant to Section 327(a). The retention of the Consultant does not require such treatment. For the foregoing reasons, the U.S. Trustee's objection is overruled and SB360's retention pursuant to Sections 105(a) and 363(b) will be granted and the Court will enter the Order which Debtors submitted with the Motion which incorporates the retention.

Dated: September 27, 2018

_____
KEVIN GROSS, U.S.B.J.