# **EXHIBIT 1**

**Third DIP Amendment**

01:24014018.1

**EXECUTION VERSION**

THIRD AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS THIRD AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT (this "Amendment"), dated as of January 3, 2019, by and among HH Global II B.V., a Dutch private limited liability company (besloten vennootschap met beperkte aansprakelijkheid) ("Global"), HH Group Holdings US, Inc., a Delaware corporation ("Parent"), Heritage Home Group LLC, a Delaware limited liability company (the "Borrower"), the other Persons party thereto that are designated as a "Credit Party", PNC Bank, National Association (in its individual capacity, "PNC"), as Agent (as defined in the Credit Agreement referred to below) for the several financial institutions from time to time party thereto (collectively, the "Lenders" and individually each, a "Lender") and for itself as a Lender and such Lenders. Capitalized terms used herein without definition shall have the meanings assigned to such terms in the Credit Agreement.

**W I T N E S S E T H:**

WHEREAS, Borrower, the other Credit Parties, the Lenders and Agent are parties to that certain Debtor-In-Possession Credit Agreement, dated as of July 31, 2018 (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement");

WHEREAS, Borrower and the other Credit Parties have requested that the Lenders amend certain terms of the Credit Agreement; and

WHEREAS, Agent and the Lenders party hereto have agreed to the requested amendment on the terms and subject to the conditions set forth herein.

NOW THEREFORE, in consideration of the foregoing premises and other good and valuable consideration paid by each party to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree that all capitalized terms not otherwise defined herein (including the recitals and preamble hereof) shall have the respective meanings ascribed to such terms in the Credit Agreement, after giving effect to this Amendment, and further agree as follows:

    1.    <u>Amendment to the Credit Agreement</u>. Subject to the satisfaction of the conditions set forth in Section 3 below, and in reliance on the representations and warranties contained in Section 4 below, the Credit Agreement is hereby amended as follows:

        a.    The definition of Maturity Date shall be amended and restated in its entirety as follows:

"Maturity Date" means the earliest to occur of: (a) April 30, 2019; (b) the effective date or substantial consummation of a Reorganization Plan that has been confirmed by an order of the Bankruptcy Court; (c) the date that all remaining inventory and other Collateral of the Credit Parties is liquidated and the proceeds of such liquidation are received by Agent; (d) the date of the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code; (e) the date of the dismissal of the Case; (f) such earlier date

on which all Obligations shall become due and payable, in whole, in accordance with the terms of this Agreement (including by acceleration by Agent); (g) the date that is thirty (30) days after the entry of the Interim Order if the Final Order has not been entered; and (h) the date on which the Aggregate Revolving Loan Commitment shall terminate in accordance with the provisions of this Agreement.

b. Section 1.1(a) of the Credit Agreement is hereby amended and restated in its entirety as follows:

> a. <u>The Revolving Credit</u>. (i) Subject to the terms and conditions of this Agreement and in reliance upon the representations and warranties of the Credit Parties contained herein, each Revolving Lender severally and not jointly agrees to make Loans to the Borrower (each such Loan, a "Revolving Loan") from time to time on any Business Day during the period from the Closing Date through the Maturity Date, in an aggregate amount not to exceed at any time outstanding the amount set forth opposite such Lender's name identified in <u>Schedule 1.1</u> under the heading "Revolving Loan Commitments" (such amount as the same may be reduced or increased from time to time in accordance with this Agreement, being referred to herein as such Lender's "Revolving Loan Commitment"), and for the applicable time period provided in <u>Schedule 1.1</u>; <u>provided</u>, <u>however</u>, that, after giving effect to any Borrowing of Revolving Loans, the aggregate principal amount of all outstanding Revolving Loans shall not exceed the Maximum Revolving Loan Balance. Subject to the other terms and conditions hereof, amounts borrowed under this subsection 1.1(a) may be repaid and reborrowed from time to time. The "Maximum Revolving Loan Balance" from time to time will be the lesser of:
>
>> (x)   the Borrowing Base in effect from time to time, and
>>
>> (y)   the Aggregate Revolving Loan Commitment then in effect,
>
> <u>less</u>, in either case, the sum of (I) the outstanding Pre-Petition Obligations <u>plus</u> (II) the aggregate amount of Letter of Credit Obligations <u>plus</u> (III) without duplication, such Reserves as may be imposed by the Agent in its Reasonable Credit Judgment

c. Schedule 1.1 attached hereto shall replace Schedule 1.1 attached to the Credit Agreement.

d. New Sections 8.01(q) and 8.01(r) shall be added to the Credit Agreement and state:

2

(q)     Reduction in DIP Obligations. The DIP Obligations exceed:

i. $30,000,000.00 at any time during the period beginning on January 4, 2019 through and including January 20, 2019; provided that from the date of this Amendment and continuing until the first date the DIP Obligations are $30,000,000.00 or less, the Borrower and Credit Parties agree there shall be no Advances until such time as the DIP Obligations are below $30,000,000.00.

ii. $22,500,000.00 at any time during the period beginning on January 21, 2019 through and including January 31, 2019; and

iii. $20,000,000.00 at any time during the period beginning on February 1, 2019 through February 28, 2019; and

iv. $15,000,000.00 at any time during the period beginning on March 1, 2019 through the Maturity Date.

(r)     Zoning Approval for Real Property Sale. On or before January 25, 2019, the Credit Parties shall not have received all necessary zoning approvals from the Zoning Board for the City of High Point required to consummate the sale of real property located at 1925 Eastchester Drive, High Point, North Carolina as approved by that certain *Order (I) Authorizing the Debtors' Private Sale of the Debtors' Headquarters Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Approving the Purchase Agreement, and (III) Granting Related Relief* entered by the Bankruptcy Court on December 10, 2018 at Docket No. 497.

2.     No Other Consents or Amendments.  Except as otherwise expressed herein, the execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any right, power or remedy of Agent and the Lenders under the Credit Agreement or any of the other Loan Documents, nor constitute a waiver of any provision of the Credit Agreement or any of the other Loan Documents. Except for the amendments set forth above, the text of the Credit Agreement and all other Loan Documents shall remain unchanged and in full force and effect and each Credit Party hereby ratifies and confirms its obligations thereunder. This Amendment shall not constitute a modification of the Credit Agreement or any other Loan Document or a course of dealing between  Borrower and the other Credit Parties, on the one hand, and the Lenders, on the other hand, at variance with the Credit Agreement or any other Loan Document such as to require further notice by the Lenders to Borrower or such Credit Parties to require strict compliance with the terms of the Credit Agreement and the other Loan Documents in the future, except as expressly set forth herein. Borrower and each other Credit Party acknowledges and expressly agrees that the Lenders reserve the right to, and do in fact, require strict compliance with all terms and provisions of the Credit Agreement and the other Loan Documents. Neither Borrower nor any other Credit Party has knowledge of any challenge to the Lenders' claims arising under the Loan Documents or the effectiveness of the Loan Documents.

3.     Fees. Upon execution of this Amendment, Agent, solely for its own account, shall have earned a non-refundable accommodation fee in the amount of $150,000. In addition, a non-refundable accommodation fee in the amount of $50,000 shall be due and payable to Agent,

solely for its own account, on February 1, 2019 and an additional $25,000 fee shall be due and payable to Agent, solely for its own account, on the first day of each subsequent calendar month until the Maturity Date.

4. <u>Conditions Precedent to Effectiveness</u>.  This Amendment shall be effective as of the date first written above upon satisfaction of the following:

(a) Agent's receipt of a counterpart hereof duly executed by Borrower, Credit Parties and the Required Lenders;

(b) Agent's receipt of a Budget acceptable to Agent in its sole discretion;

(c) Either (i) the written consent to the terms of this Amendment from each party entitled to notice pursuant to Section 1.3.3 of the Final Order; (ii) the failure of any party entitled to notice pursuant to Section 1.3.3 of the Final Order to object to this Amendment within five (5) business days of the date of notice of this Amendment; or (iii) in the event an objection to this Amendment is timely made and not withdrawn, entry of an order of the Bankruptcy Court authorizing Credit Parties' entry into this Amendment;

(d) after giving effect to this Amendment, no Default or Event of Default shall exist; and

(e) the representations and warranties of Borrower and the other Credit Parties contained in this Amendment shall be true and accurate in all material respects (without duplication of any materiality qualifier contained therein) as of the date hereof.

5. <u>Confirmation of Indebtedness</u>. The Borrowers confirm and acknowledge that as of the close of business on January 2, 2019, Borrowers were indebted to Lenders for the Obligations under the Credit Agreement without any deduction, defense, setoff, claim or counterclaim, of any nature, in the aggregate principal amount of $31,077,184.18, consisting of (a) $31,077,184.18 due on account of Revolving Advances, and (b) $0.00 on account of undrawn Letters of Credit, <u>plus</u> all fees, costs and expenses incurred to date in connection with the Credit Agreement and the Other Documents, including, without limitation, a certain fee in the amount of $1,575,000 which was incurred and became due and payable, in full, prior to the Petition Date.

6. <u>Representations and Warranties of Borrower and Other Credit Parties</u>. The Credit Parties executing this Amendment, jointly and severally, make the following representations and warranties to Agent and each Lender with respect to all Credit Parties, each and all of which shall survive the execution and delivery of this Amendment:

(a) Subject to Bankruptcy Court approval, this Amendment has been executed and delivered by duly authorized representatives of each Credit Party, and the Credit Agreement, as modified and amended by this Amendment, constitutes a legal, valid and binding obligation of each Credit Party, and is enforceable against each Credit Party in accordance with its terms;

4

(b) no Default or Event of Default has occurred or is continuing; and

(c) all of the representations and warranties of each Credit Party contained in the Credit Agreement or in any other Loan Document continue to be true and correct in all material respects (without duplication of any materiality qualifier contained therein) as of the date hereof as though made on and as of such date, except to the extent that such representation or warranty expressly relates to an earlier date or except for changes therein expressly permitted or expressly contemplated by the Credit Agreement, as amended hereby.

7. <u>Effect on the Credit Agreement and other Loan Documents</u>. Except as specifically provided herein, the Credit Agreement and the other Loan Documents shall remain in full force and effect, and are hereby ratified, reaffirmed and confirmed. This Amendment shall be deemed to be a Loan Document for all purposes.

8. <u>Costs and Expenses</u>. Subject to the time periods set forth in the Interim Order and/or Final Order, as applicable, Borrower agrees to pay on demand all reasonable and documented out-of-pocket fees, costs and expenses incurred in connection with the preparation, execution, delivery, administration, modification and amendment of this Amendment and the other instruments and documents to be delivered hereunder, including, without limitation, all reasonable and documented out-of-pocket fees, costs and expenses of counsel for Agent with respect thereto and with respect to advising Agent as to its rights and responsibilities hereunder and thereunder.

9. <u>Counterparts</u>. This Amendment may be executed in any number of separate counterparts and by the different parties hereto on separate counterparts, each of which shall be deemed an original and all of which, taken together, shall be deemed to constitute one and the same instrument. In proving this Amendment in any judicial proceedings, it shall not be necessary to produce or account for more than one such counterpart signed by the party against whom such enforcement is sought. Any signatures delivered by a party by facsimile or other electronic transmission shall be deemed an original signature hereto.

10. <u>Governing Law</u>. The laws of the State of New York shall govern all matters arising out of, in connection with or relating to this Amendment, including, without limitation, its validity, interpretation, construction, performance and enforcement (including, without limitation, any claims sounding in contract or tort law arising out of the subject matter hereof and any determinations with respect to post-judgment interest).

11. <u>Miscellaneous</u>. The provisions of this Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided that no Credit Party may assign or transfer any of its rights or obligations under this Amendment without the prior written consent of Agent and each Lender. The illegality or unenforceability of any provision of this Amendment or any instrument or agreement required hereunder shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Amendment or any instrument or agreement required hereunder. The provisions of this Amendment, together with the Credit Agreement and the other Loan Documents, each as in effect on the date hereof, represent the entire agreement and understanding of the parties hereto

with respect to the matters provided for and covered herein and therein.

12. Release.

(a) Each Borrower and each other Credit Party, on behalf of itself and its respective bankruptcy estate, as applicable, and each of their respective successors and assigns (each an "Releasing Party") hereby absolutely and unconditionally releases and forever discharges Agent and each Lender, Pre-Petition Agent and each Pre-Petition Lender, and any and all of their respective participants, parent corporations, subsidiary corporations, affiliated corporations, insurers, indemnitors, successors and assigns thereof, together with all of the present and former directors, officers, agents and employees of any of the foregoing (each a "Released Party"), from any and all claims, demands or causes of action of any kind, nature or description, whether arising in law or equity or upon contract or tort or under any state or federal law or otherwise, which any Releasing Party has had, now has, hereafter may have, or has made claim to have against any such person for or by reason of any act, omission, matter, cause or thing whatsoever arising from the Petition Date to and including the date of this Amendment, whether such claims, demands and causes of action are matured or unmatured or known or unknown, relating to the Credit Agreement, this Amendment or the transactions contemplated hereby or thereby. It is the intention of each Releasing Party in providing this release that the same shall be effective as a bar to each and every claim, demand and cause of action specified, and in furtherance of this intention it waives and relinquishes all rights and benefits under any Applicable Law which may provide that:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her might have materially affected his or her settlement with the debtor."

(b) Each Releasing Party acknowledges that it may hereafter discover facts different from or in addition to those now known or believed to be true with respect to such claims, demands, or causes of action and agree that this instrument shall be and remain effective in all respects notwithstanding any such differences or additional facts. Each Releasing Party understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(c) Each Releasing Party, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Released Party above that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Released Party on the basis of any claim released, remised and discharged by any Releasing Party pursuant to the above release. If any Releasing Party, or any of its successors, assigns or other legal representatives violates the foregoing covenant, such Releasing Party, for itself and its successors, assigns and legal representatives, agrees to pay, in addition to such other damages as any Released Party may sustain as a result of such violation, all attorneys' fees and costs incurred by such Released Party as a result of such violation.

13. Construction and Interpretation. The parties have participated jointly in the

negotiation and drafting of this Amendment. Any rule of construction or interpretation otherwise requiring this Amendment to be construed or interpreted against any party by virtue of the authorship of this Amendment shall not apply to the construction and interpretation hereof.

[*Remainder of Page Intentionally Left Blank.*]

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment or caused it to be executed by their duly authorized officers, as of the day and year first written above.

**BORROWER:**

**HERITAGE HOME GROUP LLC**

By: _____
    Name:  Robert Albergotti
    Title:   Chief Restructuring Officer

**OTHER CREDIT PARTIES:**

**HH GROUP HOLDINGS US, INC.**

By: _____
    Name:  Robert Albergotti
    Title:   Chief Restructuring Officer

**HHG GLOBAL DESIGNS LLC**

    By:  **HH GROUP HOLDINGS US, INC.**
    Its:  Sole Member

By: _____
    Name:  Robert Albergotti
    Title:   Chief Restructuring Officer

**HHG REAL PROPERTY LLC**

By: **HH GROUP HOLDINGS US, INC.**
Its: Sole Member

By: _____
Name: Robert Albergotti
Title: Chief Restructuring Officer

**HH GLOBAL II B. V.**

By: _____
Name: Robert Albergotti
Title: Chief Restructuring Officer

[SIGNATURE PAGE TO THIRD AMENDMENT TO DIP CREDIT AGREEMENT – HERITAGE]

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment to be duly executed and delivered by their duly authorized officers as of the day and year first above written.

**PNC BANK, NATIONAL ASSOCIATION**,
as Agent, Lender and L/C Issuer

By: _____
Name:  Thomas F. Karlov
Title:  S.V.P.

[SIGNATURE PAGE TO THIRD AMENDMENT TO DIP CREDIT AGREEMENT – HERITAGE]

## SCHEDULE 1.1 – REVOLVING LOAN COMMITMENTS

From the date of the Third Amendment to Debtor-In-Possession Credit Agreement through and including January 20, 2019:

| Lender | Revolving Loan Commitment |
|---|---|
| PNC Bank, National Association | $30,000,000 |
| Total | $30,000,000 |

From January 21, 2019 through and including January 31, 2019:

| Lender | Revolving Loan Commitment |
|---|---|
| PNC Bank, National Association | $22,500,000 |
| Total | $22,500,000 |

From February 1, 2019 through and including February 28, 2019:

| Lender | Revolving Loan Commitment |
|---|---|
| PNC Bank, National Association | $20,000,000 |
| Total | $20,000,000 |

From March 1, 2019 through the Maturity Date:

| Lender | Revolving Loan Commitment |
|---|---|
| PNC Bank, National Association | $15,000,000 |
| Total | $15,000,000 |