## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
                              :

In re:                       :   Chapter 11

                              :

**HERITAGE HOME GROUP LLC,** *et al.,*  :   Case No. 18-11736 (KG)

                              :

        Debtors.[1]        :   Jointly Administered

                              :   **Hearing Date: To be determined.**
                              :   **Objection Deadline: February 7, 2019 at 4:00 p.m. (ET)**
---------------------------------------------------------x

### DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCES THEREOF

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby file this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), extending the Debtors' exclusive periods for the filing of a chapter 11 plan and the solicitation of acceptances thereof by approximately ninety (90) days, and respectfully represent as follows:

### JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are:  Heritage Home Group LLC (9506); HH Global II B.V. (0165); HH Group Holdings US, Inc. (7206); HHG Real Property LLC (3221); and HHG Global Designs LLC (1150).  The Debtors' corporate headquarters is located at 1925 Eastchester Drive, High Point, North Carolina 27265.

Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 9006-2.

## BACKGROUND

### A. General Background

3. On July 29, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On August 8, 2018 the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases (the "**Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

5. Information regarding the Debtors' businesses, capital structure, and the circumstances leading to these chapter 11 cases is set forth in the *Declaration of Robert D. Albergotti in Support of Chapter 11 Petitions and First-Day Motions* [Docket No. 12] (the "**First Day Declaration**").

B.      **Sale Process**

6.      As set forth in the First Day Declaration, the Debtors' paramount goal in these chapter 11 cases was to maximize the value of their estates for the benefit of the Debtors' creditor constituencies and other stakeholders through the sale of the their business units and remaining assets. To that end, the initial months of these chapter 11 cases have been focused almost exclusively on the sale process, and, as a consequence of the Debtors' efforts, the following sales have been approved and consummated:

a.      On September 26, 2018, the Court entered an order [Docket No. 324] approving the sale of substantially all of the Debtors' assets related to the Hickory Chair, Pearson, Maitland-Smith, and La Barge Brands (the "**Luxury Sale**"). The Luxury Sale closed on October 12, 2018.

b.      On September 27, 2018, the Court entered a final order[2] [Docket No. 331] authorizing, among other things, the Debtors to enter into and perform their obligations under that certain store closing and asset disposition agreement dated as of August 29, 2018, by and among SB360 Capital Partners, LLC. The store closing sales remain ongoing.

c.      On October 23, 2018, the Court entered orders [Docket Nos. 392–395] approving the sales of the Debtors' intellectual property and other assets related to the Debtors' business of designing, manufacturing, sourcing, licensing, and selling home furnishings under the Broyhill, Thomasville, Drexel, Drexel Heritage, and Henredon brands. Each of these sales closed November 8, 2018.

By and large, the Debtors' sale process has been a success, producing far greater returns than originally projected, and although the store closing sales are ongoing the sale process is largely complete. Accordingly, the Debtors have transitioned their efforts to winding down their affairs, and determining an appropriate strategy for making distributions to creditors.

---

[2] An amended final order was entered on September 28, 2018 [D.I. 335].

**RELIEF REQUESTED**

7.      By this Motion, the Debtors request entry of an order extending the periods during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof by approximately ninety (90) days each, pursuant to section 1121(d)(1) of the Bankruptcy Code. Absent further extension, the Plan Period and Solicitation Period (each as defined below) will expire on January 25, 2019 and April 25, 2019, respectively.[3]  The Debtors seek to extend the Plan Period and Solicitation Period through and including April 25, 2019 and July 24, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods (as defined below), as may be appropriate under the circumstances.  This Motion is the Debtors' second request to extend the Exclusive Periods.  *See* D.I. 466 (the "First Extension Motion").

**BASIS FOR REQUESTED RELIEF**

8.      Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred and twenty (120) days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "**Plan Period**"). 11 U.S.C. § 1121(b).  If a debtor files a plan during the Plan Period, section 1121(c)(3) of the Bankruptcy Code provides a debtor with an additional sixty (60) days following the expiration of such Plan Period (or 180 days following the commencement of the case) to solicit acceptances of the plan without completing plan filings (the "**Solicitation Period**," and together with the Plan Period, the "**Exclusive Periods**").  11 U.S.C. § 1121(c)(3).  Section 1121(d) permits the Court to extend the Exclusive Periods for "cause."  For the reasons set forth herein, "cause" exists to extend the Exclusive Periods.

---

[3]  Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusive Periods shall automatically extend the Exclusive Periods until the Court acts on the Motion without the necessity for entry of a bridge order.

A.    **Section 1121(d) of the Bankruptcy Code Permits**
      **the Court to Extend the Exclusive Periods "For Cause"**

9.    The Exclusive Periods are designed to provide debtors with a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without disruption to the administration of the estate that may result from the filing of competing plans by non-debtor parties.  To this end, where the Exclusive Periods prove to be unfeasible timeframes, section 1121(d) of the Bankruptcy Code allows the Court to extend such Exclusive Periods for cause.  11 U.S.C. § 1121(d).[4]  Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. REP. NO. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

10.    Congress built flexibility into section 1121 of the Bankruptcy Code to give a debtor sufficient opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors.  *In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D. N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297–98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

---

[4]  Pursuant to section 1121(d)(1) of the Bankruptcy Code, the Plan Period may not be extended beyond a date that is eighteen (18) months after the commencement of a chapter 11 case.  11 U.S.C. § 1121(d)(1).  Pursuant to section 1121(d)(2), the Solicitation Period may not be extended beyond a date that is twenty (20) months after the commencement of a chapter 11 case.  11 U.S.C. § 1121(d)(2).

11.    In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including:

(a)    The size and complexity of the debtor's case;

(b)    The necessity of sufficient time to negotiate and prepare adequate information;

(c)    The existence of good-faith progress towards reorganization;

(d)    Whether the debtor is paying its debts as they become due;

(e)    Whether the debtor has made progress negotiating with creditors;

(f)    The length of time a case has been pending;

(g)    Whether the debtor is seeking an extension to pressure creditors; and

(h)    Whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC*, 228 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed "cause" to extend its exclusive period based upon certain of above-quoted factors).

12.    The facts and circumstances of these chapter 11 cases justify extending the Exclusive Periods.

**B.    Cause Exists for an Extension of the Plan Period**

13.    The Debtors have been operating under the protection of chapter 11 for approximately six (6) months, during which time they have achieved significant progress, most prominently the aforementioned:  (i) sale of the Luxury Business; (ii) negotiating, entering into, and obtaining approval of the agency agreement and related store closing sales; and (iii) sales of the Debtors' intellectual property, certain real property, machinery and equipment, and raw materials.  The Debtors have and will continue to work diligently in an effort to preserve and

maximize the value of their estates for the benefit of their creditors and other parties in interest. A detailed summary of the Debtors' activities during the first three (3) months of these chapter 11 cases is set forth in the First Extension Motion and is incorporated herein by reference.

14.    Since the filing of the First Extension Motion, the Debtors have continued to work diligently to maximize the value of their estates for the benefit of their creditors. Among other things, the Debtors have: (i) sought and obtained Court approval for the sale of significant additional estate assets, including their corporate headquarters [D.I. 467, 467, 497, 502, 525 & 571]; (ii) obtained Court approval to establish certain bar dates for the filing of proofs of claim in these chapter 11 cases [D.I. 468 & 499]; (iii) obtained Court approval of procedures to govern the Debtors' sale of certain miscellaneous assets [D.I. 567]; (iv) commenced adversary proceedings against a number of legacy franchisee customers seeking recovery and turnover of significant estate assets; (v) continued to work with their key constituents to structure and negotiate the terms of a chapter 11 plan; and (vi) handled the various other tasks related to the administration of the chapter 11 cases and the Debtors' estates.

**C.    Other Relevant Factors Favor Extending the Exclusive Periods**

**(i)    The Size, Complexity, and Duration of These Chapter 11 Cases**

15.    As set forth in the First Extension Motion the Debtors' chapter 11 cases are sufficiently large and complex to warrant the requested extension of the Exclusive Periods. The chapter 11 cases involve five (5) Debtors with business operations that spanned the globe. Despite the Debtors' expansive operations the Debtors completed the robust sale process described above in under six (6) months. Throughout these chapter 11 cases, the Debtors have cooperated and communicated with their secured lenders and the Committee. The complexity of

the issues addressed and the time, effort and planning required to obtain the progress made thus far simply cannot be overstated.

      **(ii)**      **<u>Good Faith Progress Made in These Chapter 11 Cases</u>**

      16.     As noted above, the Debtors have made significant and material progress in these chapter 11 cases and are presently engaged in discussions with their secured lenders and the Committee regarding strategies to wind-down their operations and make distributions to creditors. The progress made thus far is a result of the tireless efforts of the Debtors and their professional advisors, their secured lenders, the Committee, and various other parties in interest in these chapter 11 cases, to stabilize the Debtors' businesses and maximize value to their estates through a robust and efficient sale process. Accordingly, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

      **(iii)**     **<u>The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information</u>**

      17.     As set forth above, the Debtors and their professionals have focused much of their time, energy, and resources in the early stages of these chapter 11 cases on smoothly transitioning the Debtors' business into chapter 11 and conducting a successful sale process. As noted above, in the time since the filing the First Extension Motion the Debtors have continued managing the various essential time and resource-consuming tasks associated with operating in chapter 11 while simultaneously working with their key constituents to develop an efficient, value-maximizing exit plan. The Debtors believe that, in light of the progress that they have made thus far and their demonstrated efforts to work cooperatively with their stakeholders it is reasonable and appropriate that the Debtors be granted the modest extension of time requested herein to negotiate and finalize a chapter 11 plan. Accordingly, the Debtors submit that this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

**(iv)**      <u>The Debtors are Paying Their Debts as They Come Due</u>

18.      The requested extension of the Exclusive Periods will not prejudice the legitimate interests of postpetition creditors, as the Debtors continue to make timely payments on their undisputed postpetition obligations (other than occasional inadvertent delays or errors).  As such, this factor also weighs in favor of allowing the Debtors to extend the Exclusive Periods.

**(v)**      <u>The Debtors are Not Seeking an Extension to Pressure Creditors</u>

19.      The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods.  The Debtors believe that they have worked diligently since the filing of these chapter 11 cases to maximize the value of their assets for all stakeholders, and require the extension sought by this Motion in order to exit chapter 11 in an orderly and efficient manner. The Debtors are not seeking an extension to pressure creditors or other parties in interest.

**(vi)**      <u>Termination of the Debtors' Exclusive Periods Would Adversely Impact These Chapter 11 Cases</u>

20.      Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize the value of these estates and the progress of these chapter 11 cases.  In effect, if this Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party in interest would be free to propose a chapter 11 plan for the Debtors. Terminating the Exclusive Periods would only serve to foster a chaotic environment and only add the opportunity for parties to engage in mischievous and counterproductive behavior in pursuit of alternatives that are simply not feasible under the circumstances of these chapter 11 cases.

21.      Based upon the foregoing, the Debtors respectfully submit that cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through

and including April 25, 2019 and July 24, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## NOTICE

22.     Notice of the Motion has been provided to:  (i) the U.S. Trustee; (ii) PNC Bank, National Association, in its capacity as Pre-Petition Agent and DIP Agent; (iii) KPS Special Situations Fund III (A), L.P., in its capacity as Pre-Petition Term Agent; (iv) counsel to the Committee; and (v) those parties who have filed formal requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order and (b) grant such other and further relief as the Court may deem just and proper.

Dated: January 24, 2019
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shane M. Reil*
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Ashley E. Jacobs (No. 5635)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

01:24098539.2