**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Heritage Home Group, LLC, *et al.*, | : | Case No. 18-11736 (KG) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | **Hearing Date: 4/24/2019 at 10:00 a.m.** |
| | : | **Objection Deadline: 4/11/2019 at 4:00 p.m.** |

**MOTION OF SB360 CAPITAL PARTNERS, LLC FOR ENTRY OF AN
ORDER (I) DIRECTING DEBTORS' SECURED LENDER PNC BANK,
NATIONAL ASSOCIATION TO IMMEDIATELY REMIT SALE PROCEEDS
PAID TO PNC SUBJECT TO SB360 CAPITAL PARTNERS LLC'S RIGHT TO
PAYMENT OF ITS FEES AND REIMBURSEMENT OF EXPENSES FROM
SUCH PROCEEDS; AND (II) GRANTING SUCH OTHER AND
<u>FURTHER RELIEF AS THE COURT DEEMS JUST AND PROPER</u>**

SB360 Capital Partners, LLC ("<u>SB360</u>"), by and through undersigned counsel, hereby files this motion (the "<u>Motion</u>") for entry of an order (i) directing PNC Bank, National Association ("<u>PNC</u>") (as further defined below) to immediately remit to SB360 proceeds in the aggregate amount of $368,098.43 due to SB360 for services rendered and expenses incurred since December 29, 2019 through February 28, 2019 (plus any additional amounts calculated as due and owing to SB360 since February 28, 2019, including legal fees), arising from the sale of the Debtors' inventory and owned furniture fixtures and equipment (collectively the "<u>Subject Assets</u>") which proceeds have been remitted to PNC (on behalf of PNC and the other secured lenders purportedly represented by PNC) subject to SB360's right to payment of its fees and reimbursement of expenses pursuant to the Interim Approval Order and the Final Approval Order (each as defined below); and (ii) granting such other and further relief as the Court deems appropriate. In support of this Motion, SB360 respectfully states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).

2.      This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1409.

4.      The statutory predicates for the relief requested herein sections 105 and 506 of the Bankruptcy Code.

**BACKGROUND**

5.      On July 29, 2018, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") initiating the above-captioned cases.

6.      On August 31, 2018, following a robust bid solicitation process, the Debtors and SB360 entered into that certain store closing and asset disposition agreement (the "Disposition Agreement") pursuant to which SB360 was to serve as the Debtors' consultant in connection with the Debtors' liquidation of its inventory and owned furniture, fixtures and equipment, as more fully described in the Disposition Agreement.

7.      On September 13, 2018, this Court entered an interim order (a) Authorizing the Debtors to Enter Into the Disposition Agreement; (b) Authorizing and Approving the Conduct of Store Closing or Similar Themed Sales Free and Clear of All Liens, Claims, and Encumbrances; (c) Approving Dispute Resolution Procedures; (d) Authorizing

Customary Bonuses to Certain Employees; and (e) Granting Related Relief (the "Interim Approval Order", *D.I. #278*).

8.      Subsequently, on September 28, 2018, following an extensive hearing (pertaining to U.S. Trustee's unsuccessful assertion that SB360 should be retained under Section 327 of the Bankruptcy Code), this Court entered the final (Amended) Order *(*a) Authorizing the Debtors to Enter Into the Disposition Agreement; (b) Authorizing and Approving the Conduct of Store Closing or Similar Themed Sales Free and Clear of All Liens, Claims, and Encumbrances; (c) Approving Dispute Resolution Procedures; (d) Authorizing Customary Bonuses to Certain Employees; and (e) Granting Related Relief (the "Final Approval Order", *D.I. #335*).

9.      The Debtors and SB360 concluded the sales at the Debtors' retail store locations and wholesale distribution facilities on or about December 31, 2018, with the disposition of remaining unsold Subject Assets (comprising primarily of miscellaneous items of inventory and raw materials) continuing until today.   During the course of the Sale; (i) the sales the inventory included in the Subject Assets through February 28, 2019 aggregated $41,717,413.27, which resulted in an earned fee to SB360 of $985,091.36 through February 28, 2019 (the "Earned SB360 Inventory Fees").

10.     In addition, during the sale term through February 28, 2019, the Debtors with the assistance of SB360 sold certain owned furniture, fixtures and equipment included in the Subject Assets for an aggregate amount of $305,479.39, thereby entitling SB360 to an earned FF&E disposition fee of $45,821.91 (the "Earned SB360 FF&E Fees", and together with the Earned SB360 Inventory Fees, the "Earned SB360 Fees").

11.     During the sale term, under the Disposition Agreement SB360 incurred direct out of pocket expenses in connection with the sales of the Subject Assets in the aggregate amount of $2,395,222.57 in accordance with the Budget annexed thereto, (collectively, the "SB360 Out Of Pocket Expenses").

12.     During each week of the Sale, SB360 and the Debtors exchanged information and SB360 prepared weekly invoices setting for the prior week's sales together with the calculation of the fees and expense reimbursement due to SB360 (the "SB360 Weekly Sale Reconciliations"). For the most part, following their receipt of each of the SB360 Weekly Sale Reconciliations, the Debtors promptly remitted payment. However, beginning in or about the week of December 29, 2018, conspicuously about the time that the sales at the stores and the wholesale distribution facilities were completed, the Debtors ceased remitting payment of fees and/or expense reimbursement to SB360. SB360 was promised by the Debtors that payment would be received on several different occasions, but as of the date of this Motion, the aggregate amount of $368,098.43, plus legal fees (collectively, the "Outstanding SB360 Fees/Expenses") remains outstanding to SB360, which amount is comprised of: (i) $145,385.63 in unpaid Earned SB360 Fees through February 29, 2019; plus (ii) $222,712.80 for reimbursement for SB360 Out of Pocket Expenses due to SB360 in connection with the consulting services provided under the Disposition Agreement; plus (iii) legal fees and expenses incurred, or to be incurred, by SB360 in connection with the enforcement of its rights under the Disposition Agreement and the Approval Orders (which legal fees are provided for in the Consultants proposed

4

budget.[1]

13.     During the period between December 29, 2018 and February 28, 2019, notwithstanding the fact that the Debtors and PNC were not timely remitting payment of its fees, SB360 continued to work with the Debtors to dispose of the remaining Subject Assets, at the request of the Debtors.  During this time, SB360 and the Debtors finalized the SB360 Weekly Dale Reconciliations, and each week the Debtors' promises of payment went unfulfilled.

14.     On March 12, 2019, following receipt of a Notice of Default from PNC, the Debtors filed a  motion for entry of an order (i) converting their Chapter 11 cases, (ii) establishing a deadline for filing final Chapter 11 fee applications and setting a hearing thereon, and (iii) granting related relief (the "Conversion Motion", *D.I. 631*), together with a companion motion to shorten notice and the schedule the hearing on the Conversion Motion (the "Motion to Shorten Notice", *D.I. 632*).  On March 13, 2019, this Court granted the relief requested in the Motion to Shorten Notice and scheduled the hearing on the Conversion Motion for March 14, 2019 at 10:00 am. (the "Conversion Hearing").

---

[1]     SB360 notes the following: (i) the fee of $145,385.63 in fees earned by SB360 primarily with respect to wholesale sales of inventory, during the period between December 29, 2018 and February 28, 2019, translates to aggregate sales in excess of $6 million; and (ii) despite being requested to add additional supervision personnel to the Sale that were not initially contemplate by the proposed budget, the aggregate amount of expenses incurred by SB360 during the term of the sale of the Subject Assets in accordance with the Disposition Agreement (without taking into account the legal fees and expenses incurred and/or to be incurred by SB360 in connection with this motion and the enforcement of its right under the Disposition Agreement and the Approval Orders, for which SB360 is entitled to be reimbursed) is in excess of $175,000 less than what was initially projected in the "Consultant Controlled Expense Budget" initially attached to the Disposition Agreement.

15.    SB360 filed it objection to the Conversion Motion (the "SB360 Objection",

*D.I. 636)* in which SB360 asserted, as it assets herein, its senior rights in and to the

proceeds of the sale sufficient to remit payment in full of the Outstanding SB360

Fees/Expenses.[2]    In addition, the Committee filed a statement and reservation of rights

with respect to the Conversion Motion (the "Committee's Statement", *D.I. 637*) in which

the Committee laid out what it believed to be a hidden agenda of PNC (and the other

secured creditors PNC purportedly represents).    A reading of the Committee's Statement,

coupled with the facts known to SB360 appears to indicate that while the Debtors and the

Committee were negotiating a global settlement with  the Pre-Petition Term Lenders which

would serve as the foundation of a plan and while SB360 was working with the Debtors to

diligently complete the liquidation of the Subject Collateral, PNC was stringing everyone

along so that its collateral would be liquidated, all the while sweeping all of the sale

proceeds, including those that property belong to SB360, and refuse to fund the Debtors.

16.    Neither the Debtors nor PNC disputed the assertions made by SB360 in the

SB360 Objection or at the Conversion Hearing.  The Court indicated that should SB360

and PNC not be able to resolve the issue, that SB360 should file a motion.  As of the date

of this motion, the issue has not been resolved and SB360 has not received payment of

amounts owed to it.

---

[2]    In an effort to bring finality to the issue, at the Conversion Hearing, SB360 stated on the
record that if it received immediate payment of the $368,098.43 that was due and owing as of February 28,
2019, it would foregoing payment in any fees in excess of such amounts.   The Debtors (because they were
unable to) and PNC and the other Secured Creditors (because they chose not to) did not take SB360 up on
the offer made at the Conversion Hearing and accordingly such proposal is hereby revoked, and SB360
hereby seeks payment of such additional amounts once calculated.

17.     The services provided by SB360 to the Debtors under the Disposition Agreement, served as a significant and valuable factor in the Debtors' liquidation of its non-luxury brand inventory and owned furniture, fixtures and equipment (the "Subject Assets").  Prior to the commencement of the liquidation sales, the Subject Assets were the subject of liens of the Debtors' prepetition secured lenders and debtor-in-possession lenders and other secured creditors (collectively the "Secured Creditors").  PNC serves as the Agent for itself and the Debtors' other pre-petition lenders and the DIP lender and, upon information and belief, it is PNC who swept the proceeds from the sale of the Subject Assets from the Debtors' bank accounts and applied such amounts to the outstanding obligation under pre-petition and post-petition amounts owed by the Debtors. [3]    Both the Interim Approval Order and the Final Approval Order (collectively, the "Approval Orders", provide that:

> "Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell all Sale Assets pursuant to the Disposition Agreement and in accordance with the Sale Guidelines and any Side Letter Agreement.  All sales of Sale Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, and encumbrances; *provided, however, that any liens, claims, and encumbrances shall attach to the proceeds of the sale of applicable Sale Assets with the same validity and priority and to the same extent and in the same amount that any such liens, claims, and encumbrances had with respect to such Sale Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and subject to the Consultant's fees and expenses pursuant to the*

---

[3]     KPS Special Situations Fund III (A), LP, KPS Special Situations Fund III, LP, KPS Special Situations Fund III (Supplemental), LP, KPS Special Situations Fund III (AIV), LP, KPS Offshore Investors Ltd., KPS Cayman Management III Ltd. and KPS Capital Partners, LP (collectively "Pre-Petition Term Lenders") are Secured Creditors of the Debtors, but "last out" lenders to be paid after PNC (and the pre-petition and DIP lender it represents are paid in full).

***Disposition Agreement****. (Interim Approval Order ¶22, and the Final Approval Order ¶22, Emphasis Added)*.

18.    Thus under the Approval Orders, as the Subject Assets were sold, they were sold free and clear of all liens, claims and encumbrances ("collectively, the "Existing Liens"), with all subject Existing Liens, including those of PNC, attaching to the proceeds from the sale of the Subject Assets, in the same order and priority as they existed in the Subject Assets, ***subject to any claims and defenses that the Debtors may possess with respect thereto and subject to the Consultant's fees and expenses pursuant to the Disposition Agreement***.   The language is clear in both of the Approval Orders, which were the subject of extensive review and negotiations among the parties.  SB360 relied on such language to serve as its protection from PNC doing exactly what they are attempting to do here, collecting all of the proceeds from the disposition of their collateral, including the disposition of the Subject Assets, and not pay SB360 for the services it rendered in connection with such disposition, and leaving SB360 to bear the risk of administrative insolvency.   Putting aside the inequities of not paying SB360 for the services rending in connection with the liquidation of their collateral, and the bad precedent that such actions by any secured lender would set, PNC should not be permitted to disregard the Disposition Agreement and the Approval Orders, and sweep all of the proceeds for the disposition of the Subject Assets, thereby attempting to usurp SB360 rights and claims to such proceeds.

19.    The proceeds from the sale of the Subject Assets, to the extent of SB360's unpaid fees and expenses, are/were the subject to the payment of the fees and expenses of SB360.  SB360's entitlement to payment of such amounts should not be subject to the

whim of PNC (who has received the benefit of SB360's services in connection with the

liquidation of its collateral and a waiver of its Section 506(c) liability), as to whether or not

it chooses to advance funds to the Debtors so that the Debtors can pay SB360.  Such is not

the letter, intention or spirit of the Disposition Agreement and/or the Approval Orders.

20.    There is no dispute as to the amounts owed to SB360, nor is there a dispute

as to the provisions of the Approval Orders, namely that PNC and the other Secured

Lenders rights in and to the proceeds from the sale of the Subject Assets was subject to

SB360's right to payment of its fees and reimbursement of expenses.   All of this was

known by and agreed to by PNC and the other Secured Lenders and they should not be

permitted to circumvent what they agreed to and/or the provisions of the Approval Orders

merely because they have not been paid within the time frame they had expected.

## CONCLUSION

WHEREFORE, SB360 respectfully requests that this Court enter an Order: (i) directing PNC and any other secured creditor PNC purports to present, to jointly and severally, immediately remit payment of the amounts due and owing to SB360 pursuant to the Disposition Agreement and the Approval Orders, in the aggregate amount equal to the sum of (i) $368,098.43, plus (ii) such other additional amounts as may be due and owing to SB360 under the Disposition Agreement and the Approval Order, including without limitation legal fees and expenses incurred, or to be incurred by SB360, in connection with the enforcement of its rights under the Disposition Agreement and the Approval Orders; and (ii)  order such other or further relief as it deems proper.

Dated: March 28, 2019  
Wilmington, Delaware

**CKR LAW LLP**

/s/ Marc J. Phillips
_____
Marc J.  Phillips (No. 4445)  
1000 N. West Street, Suite 1200  
Wilmington, DE  19801  
Telephone: (302) 367-7834  
Email:  mphillips@ckrlaw.com

and

Maura I. Russell (Admitted *Pro Hac Vice*)  
1330 Avenue of the Americas  
New York, NY 10019  
Telephone:  (212) 259-7300  
Email:  mrussell@ckrlaw.com

*Counsel to SB360 Capital Partners, LLC*